## Sunnybrook, Inc., Petition

*High, Swartz, Flynn & Roberts,* for petitioner.
*Elmer L. Menges,* for respondent.

KNIGHT, P. J., July 29, 1949.—On June 3, 1940, the Supervisors of Upper Dublin Township, then a township of the second class, approved a plan of subdivision of a tract of land comprising about 74 acres.

, The plan shows proposed streets, and the land is divided into lots varying in size, although the majority are 68 feet in front by 115 feet in depth.

About 30 percent of the tract so subdivided was developed, streets were built and single dwelling houses erected.

Subsequently the remaining 70 percent was sold under foreclosure proceedings, and purchased by the mortgagee.

On March 11, 1947, the Commissioners of Upper Dublin Township, then a township of the first class, enacted an amendment to the Upper Dublin Zoning Ordinance of 1946, by the terms of which the above-mentioned tract of land was placed under the classifications "D" and "U" residential districts. In zone "D" the minimum lot area allowed for each lot is 20,000 square feet, and in zone "U" the minimum lot area is 10,000 square feet.

On December 8, 1947, North Hill Homes, Inc., with actual and constructive notice of the amended zoning ordinance of 1947, took title to the remainder of the tract of 74 acres.

North Hills Homes, Inc., and Sunnybrook, Inc., have the same officers and stockholders, and the same interests control both corporations. Donald F. Henry, the present title holder, represents the same interests as the two corporations.

Sunnybrook, Inc., applied to the Board of Adjustment of Upper Dublin Township for a special exception or variance, permitting it to develop the tract

above mentioned and build homes thereon, in accordance with the plan approved by the supervisors on June 3, 1940.

The application was refused, and from this decision of the board appellant filed this appeal.

The first question to be considered is whether this appeal was taken in time.

Under the Zoning Law, an appeal must be taken in 30 days from the time the decision was filed by the board of adjustment.

The return of the board does not state the date the decision was filed, but the petition for allowance of appeal gives the date as May 8, 1948. The petition for allowance to appeal was filed in this court on June 8, 1948.

Under Pa. R. C. P. 106, in computing time, the first day is excluded and the last day included.

Applying this rule, it will be seen that the petition for allowance to appeal was filed on the thirty-first day after the decision of the board of adjustment was filed.

The general rule is that when the legislature fixes a time when a certain thing must be done, it is a mandatory direction and the courts have no power to ignore the legislative mandate or extend the time. In the present case, counsel for the board of adjustment asks that the appeal be dismissed because it was not filed in time, and the court has no other alternative than to dismiss it.

We could stop here, but counsel for appellant has asked us to discuss the case on its merits, so some comments may be in order.

Appellant takes the position that the board of supervisors having approved the plan of June 3, 1940, the board of adjustment has no discretion in the matter. In other words, appellant as successor in title to the

original subdivider who presented the plan for approval, has a vested right to proceed in accordance with the approved plan.

We cannot agree with this contention. The Commissioners of Upper Dublin Township had the right and power to amend its zoning ordinance.

It is to be assumed that the township commissioners complied with all of the provisions of the law in passing the amendment to the zoning ordinance, and that the predecessors in title to appellant had legal notice of the proposed amendment and an opportunity to object to its passage. Appellant did not change its position by reason of the amendment but purchased the tract with actual and constructive notice of the new regulation.

Under these circumstances, appellant had and has no vested right to develop the tract in accordance with the plan approved June 3, 1940.

Counsel for appellant contends that if appellant has no vested right to proceed according to the plan, the board of adjustment abused its discretion in refusing a special exception permitting him to build in accordance with the plan.

The application for a special exception or variance was under section 1311 of the amended Upper Dublin Zoning Ordinance of 1946.

This section is unusual in zoning ordinances. It reads as follows:

"Section 1311. Real Estate Sub-Divisions.

"In all cases where a plan for the subdivision and sale of a tract of land into three or more lots has been approved by the Board of Township Commissioners prior to the date of the enactment of this Amending Ordinance, which plan, when approved, was in conformity with the regulations and Ordinance in effect in the Township at the time of its approval, the owner

or developer of such land, or any portion thereof, may apply to the Board of Adjustment for a special exception to the provisions of the Amending Ordinance, governing minimum lot and building areas, front, side or rear yard, where it appears that provisions of this Amending Ordinance will render impracticable the subdivision and the development of the lots according to the plan approved. The intent and purpose hereof is that the provisions of this Amending Ordinance shall not work undue hardship upon the owner or developer who has had his plan of development, which conformed at the time to the Ordinance hereby amended, approved by the Commissioners."

The plan of June 3, 1940, was in conformity with the regulations and ordinances in effect in the township at the time of its approval.

It will be noted that the section makes the "impracticability" of the approved plan under the amendment the criterion for a special exception.

Since the minimum lot area is increased by the amendment, it follows that the front, side and rear yards and building area are not adversely affected by its provisions, and it would seem to follow that the meaning of the section is that a special exception could be sought if the amendment made the approved plan impracticable from an economic standpoint.

The uncontradicted testimony discloses that the development of this tract would be impracticable from an economic standpoint. The minimum lot area under the amendment is 10,000 and 20,000 square feet, with the majority of the tract in the latter classification. The average lot under the approved plan is 7,820 square feet, and the uncontradicted evidence is that it would not only be impracticable but economically impossible to build the class of houses suitable for the neighborhood, using a lot of 20,000 square feet. The

type of the houses adjacent to the tract and some of the surrounding conditions supports this evidence.

We are therefore of the opinion that the amendment works an undue hardship on the owner and developer of the tract comprised in the approved plan.

We are aware that it is only in cases of flagrant abuse of discretion or a misapprehension of the law that decisions of the board of adjustment should be set aside. This case, however, is different from the usual case, for here we must consider whether the approved plan became "impracticable" under the amendment.

Bearing upon this question of abuse of discretion, it may be interesting to consider the reasons advanced by the board of adjustment in support of its decision.

They are:

1. Petitioner is not the original owner or developer.

The approved plan applies to one certain piece of land, a 74-acre tract. It was the use of the land that was approved, not the owner or developer.

We are of the opinion that section 1311 of the ordinance does not limit the right to seek a special exception to the original owner or developer: certainly, in express words, it does not say so. Appellant, in our opinion, succeeded to all of the rights of the original owner, so far as the plan is concerned. Appellant took title to his land encumbered with the comprehensive plan, and he in fairness should be entitled to any benefit derived from it.

2. There is no substantial proof that the Township of Upper Dublin ever approved a plan for a subdivision and sale of the tract of land indicated by petitioner; at the most there was an approval of plan for roads only given to the prior owner or developer.

The plan was offered in evidence; it shows the entire 74 acres divided into lots and bears the admitted sig-

natures of the three Supervisors of Upper Dublin Township.

In addition, about 30 percent of the tract was developed, in accordance with this plan.

3. Petitioner cannot claim hardship because at the time of the purchase he knew that his proposed plan would not comply with existing zoning regulations.

It is true that when petitioner purchased the land he had actual and constructive notice of the amendment, but he also knew that a plan of subdivision had been approved, and that under section 1311 of the zoning ordinance he could seek a special exception if the amendment made the approved plan impracticable and worked an undue hardship upon him.

4. A large majority of the adjacent and nearly adjacent property owners objected to the granting of this petition.

This is not a valid reason. If petitioner were entitled to a special exception, he should have it irrespective of the number of protestants.

It will also be noted that the great majority of those opposed to granting the exception live on that portion of the tract already developed under the plan. Their own lots do not conform to the regulations of the amendments and still they want to apply the higher restrictions to the balance of the tract.

We are of the opinion that the board of adjustment abused its discretion in refusing to grant appellant a special exception. In discussing the merits, however, it must be understood that what we have said is only dicta, and represents the views of the hearing judge only, and not the court en banc.

And now, July 29, 1949, the appeal is dismissed, on the sole ground that it was not filed in time.

Exceptions to this order may be taken within 15 days.